## THE MAJESTIC II.

(District Court, S. D. Florida. December 7, 1922.)

### No. 278.

1. Maritime liens ⬞25—Supplies must be necessary for vessel or crew; "necessaries."

Merchant Marine Act June 5, 1920, § 30, subsec. P, gives a maritime lien for supplies only where they are for use of the vessel or crew, which does not include merchandise for cargo or trading purposes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

⬞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Maritime liens ⬅️25—No lien for supplies furnished contrary to order of owners.**

> One furnishing supplies to a vessel on orders of the master, after receipt of notice from the owners not to furnish supplies, except on their order, *held* not entitled to a lien therefor under Merchant Marine Act June 5, 1920, § 30, subsecs. P, Q, R.

In Admiralty. Suit by the William Curry's Sons Company against the British schooner Majestic II. Decree for respondent.

W. Hunt Harris, of Key West, Fla., for libelant.

H. H. Taylor, of Key West, Fla., for claimant.

CALL, District Judge. On April 8, 1922, libelant attached the schooner Majestic No. II, claiming $722.43 for supplies necessary for the continuance of her voyage. April 10, 1922, Geo. P. Parsons, master, filed claim as bailee, gave bond and the vessel was released.

April 19th answer was filed, in which it was denied that the vessel was in need of necessary supplies to continue her voyage from Key West to other ports, and denied that libelant furnished and equipped said vessel with necessary supplies for said voyage. The answer further denies that the libelant furnished the materials and supplies to said vessel as alleged in the libel and that the supplies furnished were necessary.

The Majestic No. II was a small schooner, 47 tons burden, whose home port was Grand Cayman, British West Indies, trading between that port, Key West, and other ports. On May 19, 20, and 21, 1920, while in the port of Key West certain goods and merchandise was purchased from the libelant, amounting to $357.19. The credit shown on the copy of the libelant's ledger filed in evidence during that month amounts to $379.04. From July 5 to 10, 1920, certain other goods, amounting to $925.24, were purchased from the libelant. The credits during this time amount to $636.15. The vessel at the time of these purchases was lying at libelant's wharf and the business was done with the master of the vessel.

On June 8, 1920, a letter was written to the libelant, signed "Majestic No. II, and Owners, per Royal B. Borden," asking that no goods be delivered to the schooner, or on owner's account, unless the libelant received written order from them. This letter also asked that, if there was an account against the schooner, it be sent to them, that it might be paid; also that S. Borden, captain of the schooner, would pay for goods bought on last trip for schooner. This letter was received by libelant on June 19, 1920. It is apparent from the testimony taken that many of the goods purchased were for trading and cargo purposes, and that it was not the purpose of the libelant, in selling the goods purchased, to extend credit to the vessel, or the owners, or master.

The libel was filed, claiming a maritime lien under subsection P of section 30 of the Act of June 5, 1920 (41 Stat. 1005), which is not materially different from the act of Congress existing at the time of its

passage. Subsections Q and R are likewise the re-enactment of the act preceding their adoption. Subsection P reads:

"Any person furnishing repairs * * * or other necessaries, to any vessel * * * upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien," etc.

Subsection Q names the person who will be presumed to have authority to order; among them the lawful master. Subsection R refers to charterers and owners under conditional bills of sale.

[1] As I understand the language of subsection P, the necessaries furnished the vessel must be necessary to the vessel as a vessel, to permit her to make her voyage, such as repairs to her hull, rigging, etc., and supplies for the engine room, if a steamer, and food, etc., for her crew, and does not apply to goods and merchandise for cargo or trading purposes. If goods and merchandise were purchased for last-mentioned purposes, there is no maritime lien on the vessel, but the seller must look to the purchaser for his money.

An examination of the bill of particulars attached to the libel will show many articles which could not have been for the use of the vessel or her crew on a voyage from Key West to Grand Cayman of three days, and the answer puts in issue the question whether the goods and merchandise was necessary for the vessel, and thus places the burden of proving the same upon the libelant. In this case it has not been met. In so far as the goods and merchandise furnished and charged to the schooner, in June, 1920, is concerned, the credits admitted by the libelant amount to more than the goods sold, and even though said goods and merchandise fall within the term "necessaries" as used in the act, clearly no maritime lien would exist.

[2] As to the goods and merchandise purchased in July, 1920, where a difference is shown between the amount purchased and the credits in favor of the libelant, the letter of the owner to libelant received June 19, 1920, was sufficient to put libelant on notice not to furnish goods and merchandise to the vessel, except upon the order of the owners, and I am of opinion that any goods or merchandise furnished after the receipt of that letter, were so furnished at the peril of the furnisher, to inquire and convince himself that the goods and merchandise were necessities to the ship as contemplated in the act. It would not be sufficient to rely upon any assertions of the master as to his being part owner, etc., especially made subsequent to the time the goods were furnished.

Objections were made to testimony and motion to strike made, but it seems to me that they are not very material in the view I take of this case. Of course, sheets from a ledger, or copies made from such sheets, are not admissible to prove the sale and delivery of goods; but in this case the slips were afterward produced, and the witness sufficiently shows delivery alongside the vessel. Credits shown on such sheet may be considered, because admissions against interest.

I am of opinion, therefore, that the libelant has failed to sustain his case, and that the libel should be dismissed, with costs to claimant. It will be so ordered.